Rel: December 19, 2025

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**.  Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0650), of any typographical or other errors, in order that corrections may be made before the opinion is printed in **Southern Reporter**.

# SUPREME COURT OF ALABAMA

## OCTOBER TERM, 2025-2026

————————————————

## SC-2024-0693

————————————————

### Jerry M. Blevins

v.

### Alabama State Bar

### Appeal from Disciplinary Board of Alabama State Bar
### (ASB No. 2017-927)

PER CURIAM.

Jerry M. Blevins appeals from an order of a panel of the Disciplinary Board of the Alabama State Bar ("the Board") imposing a

public reprimand, without publication, and suspending him from the practice of law for 180 days. We affirm.

## I. Facts and Procedural History

This disciplinary action arose from a fee dispute that occurred between Elizabeth A. Citrin and the law firm Beasley, Allen, Crow, Methvin, Portis & Miles, P.C. ("Beasley Allen"), after Citrin engaged Beasley Allen to participate as cocounsel in an underlying action she had been litigating. Citrin hired Blevins to represent her in that fee dispute. Blevins drafted a "Fee Agreement," providing that he would receive a contingent fee of 40% of all sums that Citrin recovered from Beasley Allen in excess of $222,750, "which is the sum [Beasley Allen] … acknowledge[d] owing [Citrin] for attorney fees in the underlying action."

On July 12, 2017, the fee dispute between Citrin and Beasley Allen was mediated. According to Blevins, he discovered during the mediation that Citrin had misrepresented her fee-split agreement with Beasley Allen, which, he claims, caused him to become "infuriated, irate, revolted, pissed off, disappointed, and extremely angry." Blevins's brief at 22. Specifically, Blevins claims that Citrin had told him that she was entitled to 60% of the attorneys' fees in the underlying action when, in fact, she

was entitled to only 30%. Nevertheless, Blevins never said anything to Citrin during the mediation about being upset over the alleged misrepresentation. As a result of the mediation, Beasley Allen agreed to pay Citrin $300,712.50 ("the settlement funds"). On August 9, 2017, nearly a month after the formal mediation settlement agreement was executed and Blevins had received and deposited the settlement funds into his trust account, he sent Citrin a letter stating, in relevant part:

> "Because the amount [owed] to you was actually disputed by [Beasley Allen], I believe the 40% contingent fee should apply to the entire recovery. This would result in you receiving $180,427.50, and me receiving $120,285.00 of the settlement funds. …
>
> "….
>
> "In closing, I would appreciate you advising as to whether you consent to the distribution of the settlement funds as set forth herein. Absent an agreement, I shall intend on holding the funds in my trust account until such time as the dispute is finally resolved."

Thus, Blevins proposed that he was entitled to 40% of the entire amount of the settlement funds, which was $89,100 more than the $31,185 he would have been entitled to under the fee agreement. Citrin thereafter filed a complaint against Blevins with the Alabama State Bar ("the Bar"). She also hired another attorney who, on August 11, 2017,

3

commenced an action against Blevins in the Baldwin Circuit Court, seeking to enforce the fee agreement between Blevins and Citrin. The Baldwin Circuit Court entered an order requiring Blevins to disburse $180,427.50 to Citrin, to pay himself $31,185, and to deposit the remaining $89,100 ("the disputed funds") with the clerk of the court. The case was subsequently transferred to the Montgomery Circuit Court. On September 5, 2018, the Montgomery Circuit Court entered a summary judgment in favor of Citrin and ordered Blevins to release the disputed funds to her. This Court affirmed the summary judgment in favor of Citrin, without an opinion. See Blevins v. Citrin (No. 1180288, Aug. 9, 2019), 312 So. 3d 4 (Ala. 2019) (table).

On March 9, 2022, the Bar formally charged Blevins with 10 violations of the Alabama Rules of Professional Conduct in connection with his representation of Citrin. The Bar later amended its charges to include only three violations, including violations of Rules 1.4 ("Communication"), 1.5 ("Fees"), and 8.4 ("Misconduct"), Ala. R. Prof'l Cond. Following a hearing on the charges, the Board entered an order finding that Blevins had violated Rules 1.4 and 1.5, but not Rule 8.4. The Board imposed a public reprimand, without publication, for Blevins's

4

violation of Rule 1.4(b) and suspended him from the practice of law for 180 days for his violation of Rule 1.5(a). In its written "Report and Order," the Board stated the following:

"Jerry Michael Blevins ('Blevins') was admitted to practice law in the State of Alabama on April 29, 1994. On April 24, 2017, attorney Elizabeth Citrin ('Citrin') retained Blevins to represent her in a fee dispute with the law firm of [Beasley Allen]. Blevins drafted a written contingency fee agreement, on his letterhead, that provided that Blevins was to be paid a contingent fee of 40% of all sums recovered in excess of $222,750.00, which was the sum that Beasley Allen acknowledged owing Citrin as her portion of a case they had jointly settled. Citrin believed she was entitled to more than Beasley Allen was offering. On July 12, 2017, with Blevins representing her, Citrin mediated the case with Beasley Allen and arrived at a negotiated settlement whereby Citrin would receive a total of $300,712.50 and Beasley Allen would receive $367,527.50. This amount was $77,962.50 ($300,712.50 - $222,750.00) more than what Beasley Allen had originally offered Citrin. Under the written contingency fee agreement with Blevins, he would receive $31,185.00, which was 40% of $77,962.50.

"Blevins testified at his disciplinary hearing that during the mediation, he concluded that Citrin had lied to him about what she was really entitled to under her agreement with Beasley Allen and that this made him very angry at Citrin. He testified that he told Citrin that he was angry at her during the mediation. Citrin testified that Blevins never said anything about being angry at her, in mediation or otherwise. What is clear is that the written contingency fee agreement between Blevins and Citrin was not modified during or shortly after mediation. Blevins did not mention any alleged misrepresentations (alleged 'lies') during mediation, nor did

5

he mention amending the contingency fee agreement. As a result, Citrin signed the mediation settlement agreement without receiving critical information from her attorney. Blevins'[s] failure to disclose this significant information influenced Citrin's decision to execute the mediation settlement agreement.

"After the settlement funds were received from Beasley Allen and deposited into Blevins'[s] trust account, Citrin received a letter from Blevins dated August 9, 2017. Blevins'[s] letter confirmed the terms of the written contingency fee agreement between he and Citrin but stated that Blevins did not believe that the written contingency fee agreement should be followed because the $222,750.00[ ] sum listed in the letter was, in his opinion, a disputed issue. For the first time in the representation of Citrin, and contrary to the written contingency fee agreement, Blevins stated that the 40% contingent fee should apply to the full sum awarded Citrin ($300,712.50) in mediation, rather than the agreed amount in excess of $222,750.00. Specifically, Blevins alleged that he should receive $120,285.00 ($300,712.50 x 40%) rather than $31,185.00, which was the amount due under the written contingent fee agreement ($300,712.50 - $222,750 = [$77,962.50] x 40%) and Citrin should receive [$180,427.50] ([$300,712.50] x 60%). Blevins concluded his August 9, 2017, letter by stating, '[i]n closing, I would appreciate you advising as to whether you consent to the distribution of the settlement funds as set forth herein. Absent an agreement, I shall intend on holding the funds in my trust account until the dispute is finally resolved.' In response to this letter, Citrin called and emailed Blevins several times. Blevins did not return her call and chose to communicate only via letters and emails. Blevins characterizes the August 9, 2017, letter as an invitation to Citrin to discuss the proper calculation of his contingency fee. In fact, the letter was a unilateral, post-settlement attempt to impose a substantially higher contingency fee after settlement, coupled with a refusal to disburse settlement

6

funds unless Citrin agreed to this post-settlement contingency fee increase.

> "Citrin ultimately retained new counsel, at an additional expense, and sued Blevins in state court. On [September 5, 2018], Citrin received a judgment against Blevins in an amount that mirrored the monies owed under the original written contingency fee agreement. On August 9, 2019, the Alabama Supreme Court affirmed, without opinion, the trial court's order."

The Board found three aggravating circumstances: (1) that Blevins had prior disciplinary offenses, (2) that he had dishonest or selfish motives, and (3) that he had substantial experience in the practice of law. The Board also found two mitigating circumstances: (1) that Blevins made full and free disclosure to the Board or had a cooperative attitude toward the proceedings and (2) the remoteness of his prior offenses. The Board specifically found that the mitigating circumstance of delay in the disciplinary proceedings did not exist. Blevins appealed.

## II. Standard of Review

> "In reviewing a disciplinary order of the Board, this Court 'will presume that the Board's decision on the facts is correct; and the disciplinary order will be affirmed unless the decision on the facts is unsupported by clear and convincing evidence, or the order misapplies the law to the facts.' Hunt v. Disciplinary Bd. of the Alabama State Bar, 381 So. 2d 52, 54 (Ala. 1980). All legal conclusions by the Board, however, are

7

reviewed de novo. <u>Tipler v. Alabama State Bar</u>, 866 So. 2d 1126, 1137 (Ala. 2003)."

<u>May v. Alabama State Bar</u>, 311 So. 3d 758, 759 (Ala. 2020). <u>See</u> <u>also</u> <u>Tipler v. Alabama State Bar</u>, 866 So. 2d 1126, 1137 (Ala. 2003) (noting that this Court will accord the Board's findings based on oral testimony the benefit of the ore tenus presumption).

## III.  Discussion

### A. Section 34-3-62, Ala. Code 1975 -- Procedure for Disputed Compensation

Blevins first presents an issue regarding § 34-3-62, Ala. Code 1975, which he frames as jurisdictional.  Blevins contends that, pursuant to § 34-3-62, the Board lacked "jurisdiction" over the formal charges brought against him by the Bar and that the Board's order is, therefore, void. That statute provides:

"Whenever any disagreement or controversy arises between an attorney-at-law and any other person respecting <u>the amount of the compensation</u> to which he or she is entitled by contract or otherwise <u>and his or her retention of the same out of any funds in his or her hands</u>, such attorney <u>may by motion in the circuit court</u> or court of like jurisdiction, <u>of the county of his or her residence</u>, of which such other person shall have notice, <u>obtain an order of the court that a certain amount is due under such contract or would be reasonable compensation for his or her services; and, when such motion is made and order obtained, such attorney shall not be subject</u>

> to prosecution, suspension, or removal under [Ala. Code 1975, Title 34, Chapter 3] or other penalty therefor; but nothing herein contained shall affect or destroy any civil action to which any person would be entitled against such attorney respecting the same, or any criminal prosecution to which the accused would be otherwise liable."

§ 34-3-62 (emphasis added).

Blevins specifically contends that, because the Montgomery Circuit Court resolved the fee dispute in this case, § 34-3-62 mandates that he "shall not be subject to prosecution, suspension, or removal under [Ala. Code 1975, Title 34, Chapter 3] or other penalty therefor." This Court has never interpreted that portion of § 34-3-62, which Blevins claims affords him blanket immunity for any and all charges brought against him by the Bar. However, it is clear that, § 34-3-62 provides a court-supervised procedure, like mediation or arbitration, for resolving disputes regarding the amount of legal compensation owed an attorney under a contract when, as in this case, the attorney retains a client's funds. The statute requires an attorney to file a motion in the circuit court in the county of "his or her residence," and it requires notice to the "other person." The statute contemplates that, once a motion is made, the circuit court will enter an order determining "that a certain amount is due under such

9

contract or would be reasonable compensation for … services." The statute then states that, "when such motion is made and order obtained, such attorney shall not be subject to prosecution, suspension, or removal under [Ala. Code 1975, Title 34, Chapter 3] or other penalty therefor." When reading § 34-3-62 in its entirety, it is logical to conclude that, once "such motion is made and order obtained," the attorney shall not be subjected to prosecution, suspension, removal or other penalty for the wrongful retention of disputed funds. Importantly, however, the statute does not provide a safe harbor for an attorney who fails to meet his or her general ethical obligation to act diligently and resolve fee disputes in a timely and professional manner. See, e.g., Comment to Rule 1.5, Ala. R. Prof'l Cond. ("Lawyers often receive funds from third parties from which the lawyers' fees will be paid. If there is risk that the client may divert the funds without paying the fee, the lawyer is not required to remit the portion from which the fee is to be paid. However, a lawyer may not hold funds to coerce a client into accepting the lawyer's contention. The disputed portion of the funds should be kept in trust and the lawyer should suggest means for prompt resolution of the dispute, such as arbitration. The undisputed portion of the funds shall be promptly

distributed."). Thus, an attorney who diligently seeks the aid of the circuit court to resolve a fee dispute over retained funds cannot be subject to prosecution, suspension, or removal or other penalty for an alleged wrongful retention of those funds during the time when a motion under § 34-2-62 is pending and before an order is obtained. In this case, the Bar did not prosecute Blevins based on any alleged wrongful retention of funds under Rule 1.15. Rather, the Bar prosecuted Blevins for his alleged violation of Rule 1.4, regarding communication, and his alleged violation of Rule 1.5, regarding excessive fees. Thus, § 34-3-62 is inapplicable here, and Blevins's reliance on it is without merit.

Blevins also argues in the alternative that, if § 34-3-62 is invalid (or if his interpretation of that statute is invalid), the disciplinary proceedings against him are still barred because, he says, he acted in reliance on, and pursuant to, the mandates of the statute in filing his counterclaim for a declaratory judgment concerning the fee dispute. Blevins relies solely on Brooks v. Alabama State Bar, 574 So. 2d 33 (Ala. 1990), which we find distinguishable. In Brooks, the district attorney was charged by the Bar with violating the former Alabama Code of Professional Responsibility regarding extrajudicial statements that she

11

had made while prosecuting a criminal action. This Court explained that, at the time she made those statements, the district attorney could have reasonably relied on caselaw holding that such statements by a district attorney were <u>not</u> subject to discipline by the former Disciplinary Commission. Thus, this Court held that the district attorney was not subject to discipline for the conduct at issue. Unlike in <u>Brooks</u>, in this case Blevins did not rely on any caselaw regarding § 34-3-62 that would have led him to reasonably believe that, if the circuit court resolved the fee dispute, he would have blanket immunity from any and all charges brought against him by the Bar. In addition, it does not appear that Blevins specifically invoked the protections afforded by § 34-3-62 now or in the initial fee dispute between Beasley Allen and Citrin; rather, he seeks to use the statute after the fact to shield him from any discipline unrelated to his underlying fee dispute. Contrary to Blevins's argument, the disciplinary proceedings against him are not barred merely because Blevins filed a counterclaim for a declaratory judgment pursuant to § 34-3-62.

## B. Unreasonable Delay

Blevins contends that the Board committed reversible error in denying his motion to dismiss the charges against him based on the Bar's alleged unreasonable delay in prosecuting those charges. Blevins points out that, although the Bar filed formal charges against him on March 9, 2022, it took no further action on the matter until August 7, 2023, when it filed its motion seeking a judgment as a matter of law ("JML"). According to Blevins, this Court's holdings in <u>Noojin v. Alabama State Bar</u>, 577 So. 2d 420 (Ala. 1990), and <u>Hayes v. Alabama State Bar</u>, 719 So. 2d 787 (Ala. 1998), mandate that, if the Bar delays disciplinary proceedings for over a year in prosecuting formal charges and cannot offer "good cause" for the delay, the disciplinary charges <u>must</u> be dismissed. Blevins's reliance on <u>Noojin</u> and <u>Hayes</u> is misplaced because both of those cases implicate Rule 14, Ala. R. Disc. P., concerning "Matters Involving Related Pending Civil or Criminal Litigation." Rule 14 provides: "Disciplinary proceedings shall not be deferred or abated because of substantial similarity to the material allegations of pending criminal or civil litigation involving the respondent, unless authorized by the Disciplinary Board, in its discretion, for good cause shown."

13

In <u>Noojin</u>, the Bar delayed or deferred the disciplinary proceedings against Noojin for nearly a year because of a pending federal criminal matter against Noojin that ultimately affected his license to practice law. The <u>Noojin</u> Court concluded that the record was sufficient to conclude that the spirit of Rule 14 had been violated and that awaiting the culmination of a federal criminal matter was not "good cause" for delaying disciplinary proceedings for nearly a year.[1] Thus, the <u>Noojin</u> Court set aside the order of suspension entered by the Board. Likewise, in <u>Hayes</u>, three attorneys were indicted by a grand jury for conduct related to their practice of law. The Board granted the Bar's motion to stay the attorneys' disciplinary proceedings pending the trial of their criminal cases. The attorneys contended that the Bar's delay in prosecuting the formal charges following resolution of their criminal cases violated Rule 14. In response, the Bar asserted that it had stayed the proceedings on the formal charges based on the attorneys' alleged attempts to obtain discovery for their criminal cases. The <u>Hayes</u> Court concluded that the Bar's asserted excuse did not amount to "good cause"

---

[1]The <u>Noojin</u> decision dealt with former Rule 11, Ala. R. Disc. Enf't; former Rule 11 read substantially the same as Rule 14, Ala. R. Disc. P.

for delaying the disciplinary proceedings pending resolution of the criminal cases. Thus, the Hayes Court reversed the Board's disciplinary order and directed that the charges against the attorneys be dismissed. Here, Rule 14 is not implicated because, during the time frame at issue -- from March 9, 2022, when the Bar filed its charges against Blevins, until August 7, 2023, when the Bar filed its motion for a JML -- there were no civil or criminal charges pending against Blevins in another tribunal. Because Blevins has not cited any case in which this Court has applied the "good cause" analysis in Noojin and Hayes outside the context of Rule 14, he has not demonstrated that the Board's order is due to be set aside based on an unreasonable delay in prosecuting the charges against him. We further add that the record on appeal is sufficient to conclude that any delay in prosecuting the charges against Blevins was attributable, in part, to Blevins himself. As indicated, the Bar filed its formal charges against Blevins on March 9, 2022. Blevins did not file a timely answer to those charges. Rather, on April 7, 2022, Blevins filed complaints with the Bar against its General Counsel, Roman Shaul, and Assistant General Counsel, Mark Moody, alleging violations of the Alabama Rules of Professional Conduct in connection with their

15

prosecution of this case. On April 11, 2022, Blevins himself moved the Board to <u>stay</u> the disciplinary proceedings against him pending "final disposition of the Report filed" with this Court regarding "suspected misconduct" of Shaul and Moody. The Board never ruled on that motion. Although the Bar did not file its motion for a JML on the charges until August 7, 2023, it is undisputed that Blevins had not yet answered the charges filed by the Bar by that date, and, in fact, it does not appear that he did so until January 10, 2024.[2] Because the caselaw relied upon by Blevins to demonstrate an unreasonable delay is inapplicable under the facts presented, Blevins has failed to demonstrate any unreasonable delay on the part of the Bar in prosecuting the charges against him.

The Board also denied Blevins's motion to dismiss the charges brought against him based on the Bar's alleged unreasonable delay in prosecuting those charges. Blevins argues that, in denying his motion to dismiss, the Board intentionally treated him differently from the

---

[2]It appears from the record that the Bar and Blevins entered into an agreement whereby the Bar agreed to withdraw its motion for a JML and proceed to a formal hearing on the charges against Blevins if, in relevant part, Blevins was willing to stipulate that his motion to stay the proceedings constituted his answer.

16

attorneys in <u>Noojin</u> and <u>Hayes</u> with no rational basis for doing so, therefore violating his right to equal protection under the Fourteenth Amendment to the United States Constitution. Because we conclude that there was no unreasonable delay on the part of the Bar in prosecuting the charges against him, Blevins has failed to demonstrate any error on the part of the Board in denying his motion to dismiss those charges. For the same reason, we pretermit discussion of Blevins's argument that the Board erred in failing to consider "delay in disciplinary proceedings" as a mitigating factor under Standard 9.3(i) of the Alabama Standards for Imposing Lawyer Discipline.

### C. Rule 1.4, Ala. R. Prof'l Cond. ("Communication")

The Board found Blevins guilty of violating Rule 1.4(b), which provides that "[a] lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation." Blevins argues that the Bar failed to present clear and convincing evidence that he violated Rule 1.4(b) and/or that the Board misapplied the law to the facts. In its report and order, the Board stated, in pertinent part:

17

"Blevins testified at his disciplinary hearing that during the mediation, he concluded that Citrin had lied to him about what she was really entitled to under her agreement with Beasley Allen and that this made him very angry at Citrin. He testified that he told Citrin that he was angry at her during the mediation. Citrin testified that Blevins never said anything about being angry at her, in mediation or otherwise. What is clear is that the written contingency fee agreement between Blevins and Citrin was not modified during or shortly after mediation. Blevins did not mention any alleged misrepresentations (alleged 'lies') during mediation, nor did he mention amending the contingency fee agreement. As a result, Citrin signed the mediation settlement agreement without receiving critical information from her attorney. Blevins'[s] failure to disclose this significant information influenced Citrin's decision to execute the mediation settlement agreement."

Thus, the Board concluded, in relevant part, that Blevins's failure to disclose his anger to Citrin before she executed the final mediation settlement agreement resulted in Citrin's executing the agreement without receiving critical information from Blevins. Blevins contends that, even assuming that Citrin was unaware during the mediation that he was angered by what he asserts were her lies, the Bar offered no evidence to establish that Citrin would have done anything different at mediation had he told her he was angry. As previously indicated, Blevins claimed that, during the mediation, he discovered that Citrin had lied to him about the fee-split arrangement she had with Beasley Allen, which,

18

he says, caused him to become very angry and irate. Although Blevins contends that Citrin knew he was mad during the mediation, Citrin repeatedly testified during the disciplinary hearing that Blevins never mentioned anything about being mad or upset:

"Q. [Blevins:] Well, let me ask it this way. If you knew at mediation before you settled the case that I was going to later inquire as to whether my fees should apply to the entire recovery, would you have done anything different at mediation?

"....

"A. [Citrin:] If I had gone into mediation thinking that you were wanting 40 percent of everything, I wouldn't have done it. Why would I?

"....

"A. [Citrin:] I was already getting [$222,750]. That makes no sense, Mr. Blevins, and you know it.

"....

"Q. [Blevins:] Okay. If I had told you at mediation that because of whatever reason I thought my contingent fee should apply to your entire recovery, is [it your testimony] you would've just ended mediation and left and not settled the case?

"A. [Citrin:] Yes.

"....

19

"Q. [Blevins]: I had to contact you [after mediation] to get you to sign to conclude the settlement, didn't I?

"A. [Citrin]: But you did not tell me you were going to be taking another [$]89,100 when you did that. Yes, you did contact me.

"Q. [Blevins:] When did I take the [$89,100] from you?

"A. [Citrin:] You waited until you got the money into your account, and then you told me you were going to take -- not just [$]31,185, but you were entitled to another [$]89,100."

The evidence also indicates that, during the mediation, Blevins marked through that portion of the settlement agreement providing that Citrin would receive the settlement funds and, with Citrin's approval, inserted his name because, he testified, he did not think Citrin would pay him the money owed under the fee agreement. Blevins also testified that he did not discuss his feeling of anger or disgust with Citrin during the mediation because, he said, it was not the appropriate time to do so. Rather, he said, he pondered what action, if any, he would take. Blevins then stated that when the deadline came, i.e., the date he received the settlement funds, he made the decision that he could not let Citrin get away with her deceit. As the Board noted, what is clear is that Blevins had every opportunity to discuss his anger with Citrin before she signed

20

the final settlement agreement and that the fee agreement between the parties was not modified during or shortly after the mediation. Rather, Blevins waited until after he received the settlement funds -- nearly a month after mediation -- to send the August 9, 2017, letter expressing his disappointment with Citrin and suggesting that the fee agreement be modified. On that same day, Citrin sent an email to Blevins that reads, in pertinent part:

> "Since you are not responding to my phone calls, this is written notice that I do not agree to your reneging on our written contract, I do not agree to the disbursement of this money in any other [form] than our written agreement … and I would not have agreed to change the Settlement Release to include your firm had I known that you were going to try and steal this money out from under me."

As previously indicated, Citrin had to hire another attorney to commence a civil action against Blevins to enforce the parties' fee agreement. Thus, the evidence clearly and convincingly demonstrates that Blevins violated Rule 1.4(b) by failing to "explain a matter [, i.e., his anger,] to the extent reasonably necessary to permit [Citrin] to make informed decisions regarding the representation." As Citrin indicated, she would not have signed the mediation settlement agreement had Blevins communicated to her that he intended to take 40% of all the

21

settlement funds. Although Blevins offers several reasons that he says justified his failure to disclose his anger toward Citrin before sending the August 9, 2017, letter, the Comment to Rule 1.4 clearly states: "The guiding principle under this Rule is that the lawyer should fulfill the reasonable expectation of the client for information. In determining what is reasonable, the lawyer must consider that the lawyer has a duty to act in the client's best interests." Here, the evidence regarding Blevins's violation of Rule 1.4(b) more than met the clear-and-convincing evidentiary standard; thus, the Board did not err in finding that Blevins had violated that rule.

## D. Rule 1.5, Ala. R. Prof'l Cond. ("Fees")

The Board found Blevins guilty of violating Rule 1.5(a), which provides, in relevant part, that "[a] lawyer shall not enter into an agreement for, or charge, or collect a clearly excessive fee." In determining whether a fee is excessive, the rule sets out nine factors to be considered, including "whether there is a written fee agreement signed by the client." Relying on the fact that there was a written fee agreement between Blevins and Citrin, the Board concluded that Blevins's August 9, 2017, letter was a "unilateral, post-settlement attempt to impose a

22

substantially higher contingency fee after settlement, coupled with a refusal to disburse settlement funds until Citrin agreed to this post-settlement contingency fee increase."

Blevins offers several arguments that we conclude distract from the real issue, specifically whether the Bar presented clear and convincing evidence to indicate that Blevins had violated Rule 1.5(a) concerning excessive fees. For example, in the concluding paragraph, as to this issue in his appellate brief, Blevins argues:

> "Because the mere 'charging' of a fee more than what was agreed upon is not a per se violation of Rule 1.5(a); because the Bar did not prove, and the Board did not find, the 'charged' fee was excessive; and because a legitimate issue existed as to the fee owed Blevins under the terms of his written fee agreement, Blevins contends the Board's finding of a violation of Rule 1.5(a) is not supported by the evidence and is due to be vacated."

Blevins's brief at 59. In support of his argument that merely charging a fee that is more than what was agreed upon is not a per se violation of Rule 1.5(a), Blevins relies heavily on In re Disciplinary Action Against Lee, 835 N.W.2d 836 (N.D. 2013). In Lee, the disciplinary counsel argued that an attorney violates Rule 1.5(a), N.D. R. Prof'l Cond., as a matter of law if the attorney charges more than what was agreed the attorney was

23

entitled to take.[3] The Disciplinary Board of the Supreme Court of North Dakota found that the cases cited by the disciplinary counsel did "not support the general proposition that an attorney who is ultimately found to have charged more than the agreed amount has automatically violated the rule and charged an unreasonable fee." 835 N.W.2d at 841. The problem with Blevins's reliance on Lee is that, unlike in this case, in Lee there was no written fee agreement between the parties. Rather, in Lee, although the parties had orally agreed upon a 10% contingent fee, that agreement had not been reduced to writing. Cf. In re Disciplinary Action Against Moe, 594 N.W.2d 317 (N.D. 1999) (concluding that an attorney's attempt to bill the client for fees in violation of the standard attorney agreement constituted an unreasonable fee under Rule 1.5(a)). Blevins also contends that the Board did not find that the fee he sought to charge was excessive and that, in doing so, the Board was required to consider all the factors stated in Rule 1.5(a). However, Blevins cites no authority indicating that the Board is required to consider all the factors, especially if the factors are not relevant under the facts presented. Blevins also

---

[3]Rule 1.5(a), N.D. R. Prof'l Cond., provides that "[a] lawyer shall not make an agreement for, charge, or collect an unreasonable fee …."

contends that he was justified in seeking to recover the additional $89,100 because, he says, a "subsequent event" occurred that resulted in a legitimate fee dispute between him and Citrin. Specifically, he claims that his discovery during mediation that Citrin had lied to him about the amount she was entitled to under her fee-split agreement with Beasley Allen resulted in a legitimate dispute regarding the amount he was actually owed under the fee agreement. However, Blevins's allegations of fraud were considered and rejected by the Montgomery Circuit Court when that court entered a summary judgment in favor of Citrin based on the written fee agreement; this Court affirmed that summary judgment. Thus, Blevins's argument, alleging that Citrin's fraudulent lies caused a legitimate dispute concerning the amount he was owed under the fee agreement, is without merit. After reviewing the disciplinary-hearing transcript, we conclude that there was clear and convincing evidence that Blevins violated Rule 1.5(a). To emphasize, Blevins had plenty of time to express his feelings of dissatisfaction with Citrin before Citrin signed the final mediation agreement. However, he waited until after receiving the settlement funds to unilaterally propose a modification of the fee agreement. The fee agreement, as drafted,

provided that Blevins agreed to a certain fee and that, had he abided by the fee agreement, he would have received $31,185 of the settlement funds, which, as the Bar points out, was a good fee for the approximately four months that he represented Citrin. However, based on his hostility toward Citrin, Blevins sought to unilaterally modify the written fee agreement in an effort to collect an additional $89,100. Clearly, under the circumstances presented, such a fee would be excessive and in violation of Rule 1.5(a). Because Citrin disagreed with Blevins's attempt to modify the fee agreement, she was then forced to hire new counsel to represent her in enforcing the agreement. In light of the facts presented, we cannot say that the Board erred in finding that Blevins violated Rule 1.5(a).

Blevins also contends that his suspension from the practice of law for a period of 180 days for his violation of Rule 1.5(a) bears no relation to his conduct, is manifestly excessive, or is arbitrary and capricious. In support of that argument, Blevins cites Alabama State Bar v. Hallett, 26 So. 3d 1127 (Ala. 2009), and In re Conduct of Paulson, 335 Or. 436, 71 P. 3d 60 (2003), as well as other cases he collected from the Bar's website in which discipline was imposed on attorneys, in part, for violations of Rule 1.5. According to Blevins, those cases demonstrate that he should have

26

been suspended from the practice of law for only 90 days instead of 180 days. Blevins, however, cites no authority indicating that the Board, in imposing discipline, is required to consider other comparative cases. Thus, Blevins has not established that his 180-day suspension from the practice of law bears no relationship to his conduct, is manifestly excessive, or is arbitrary and capricious.

Blevins also requests other relief from the Court regarding his 180-day suspension. In arriving at an appropriate disciplinary sanction, the Board considered the various categories of aggravating factors and mitigating factors prescribed by the applicable Alabama Standards for Imposing Lawyer Discipline. With respect to the 180-day suspension for violating Rule 1.5(a), Blevins requests that this Court (1) reduce his discipline to a private or public reprimand, (2) reduce his suspension to 90 days or less, or (3) omit the requirement that he apply for reinstatement after the 180-day suspension. In requesting a private or public reprimand and/or a reduction of his suspension, Blevins contends that based on the unique facts of this case -- specifically, the fact that he addressed Citrin's alleged lies and the fee issue arising from those lies in the way he thought was most appropriate -- his conduct was at most

27

"negligent" and not "knowing." However, under the circumstances presented, we cannot say that Blevins's conduct was merely negligent. The facts presented clearly and convincingly indicate that Blevins contemplated his actions in a retaliatory manner. In his own words, Blevins was very angry at Citrin, he pondered what to do, and he ultimately decided that he was not going to let Citrin get away with her alleged lies and deceit. Blevins intentionally sought to unilaterally modify the parties' written fee agreement, causing Citrin to seek court intervention to enforce that agreement. Thus, we reject Blevins's request to reduce the discipline imposed by the Board. Because the discipline imposed by the Board was justified, we also reject Blevins's request that this Court exercise its discretion to omit the requirement that, at the end of the 180-day suspension, he apply for reinstatement. See Rule 8(b), Ala. R. Disc. P. (providing, in pertinent part: "A lawyer who has been suspended for more than (90) days must apply for reinstatement pursuant to Rule 28, [Ala. R. Disc. P.,] unless the order of suspension expressly provides otherwise, and will remain suspended until reinstated.").

## E. Equal Protection

28

After the Board issued its report and order, Blevins filed a postjudgment motion to alter, amend, or vacate the order. In his motion, Blevins argued that the discipline imposed for charging an excessive fee in violation of Rule 1.5(a), violated his right to equal protection under the Fourteenth Amendment to the United States Constitution. In <u>Grider v. City of Auburn</u>, 618 F.3d 1240, 1263-64 (M.D. Ala. 2010), it was stated:

> "To prevail on a 'class of one' equal protection claim, Plaintiffs must show they were intentionally treated differently from others who were 'similarly situated' and that there is no rational basis for the difference in treatment. [<u>Village of Willowbrook v.</u>] <u>Olech</u>, 528 U.S. [562,] 564, 120 S.Ct. [1073] at 1074 [(2000)]; <u>Griffin Indus. v. Irvin</u>, 496 F.3d 1189, 1202 (11th Cir. 2007). To be 'similarly situated,' the comparators must be '"<u>prima facie identical in all relevant respects</u>."' <u>Griffin</u>, 496 F.3d at 1204 (quoting <u>Campbell v. Rainbow City</u>, 434 F.3d 1306, 1314 (11th Cir. 2006))."

(Footnote omitted.)

Thus, to implicate a "class-of-one" equal-protection claim, Blevins was required to show (1) that he was "intentionally" treated differently from others who were similarly situated, (2) that the persons to whom he is comparing himself are prima facie identical to him in all relevant respects, and (3) that there was no rational basis for the difference in treatment. <u>Grider</u>, supra. Blevins argues that his discipline was more

29

severe than the discipline imposed on the attorney in <u>Hallett</u>, supra, who received a 90-day suspension from the practice of law.[4]  Thus, he says, his 180-day suspension from the practice of law establishes a class-of-one equal-protection violation.  We disagree.  First, Blevins points to no authority involving a class-of-one equal-protection claim in the context of a Bar disciplinary proceeding.  Next, he makes no attempt to explain how the Board "intentionally" treated him differently from the attorney in <u>Hallett</u>.  Most notably, Hallett and Blevins were not similarly situated in all relevant respects. The major difference that separates Hallett and Blevins is that Blevins was disciplined because he sought to unilaterally modify an existing written agreement in an attempt to receive an additional $89,100 from his client, who did not agree to the modification, thus causing the client to sue in circuit court to enforce the fee agreement.

---

[4]Blevins also lists as comparators other attorneys whose names he extracted from the Bar's website; those attorneys' cases involved, in part, violations of Rule 1.5.  However, it is unnecessary to discuss those comparators. As the Bar argues, and we agree, Blevins fails to mention that each case he cites from the website involves a plea agreement entered into between the Bar and the attorney in question; the punishments listed were not issued by the Board. We also reject Blevins's reliance on <u>In re Conduct of Paulson</u>, 335 Or. 436, 71 P. 3d 60 (2003), because, among other things, that case is not binding on this Court.

<u>Hallett</u>, however, did not involve such an attempt at modification, and, in fact, Hallett's client consented to the terms of the fee agreement that formed the basis of the disciplinary charges against Hallett. Notably, the number of charges, the number of aggravating circumstances, and the number of mitigating factors are also different in the two cases. As the <u>Grider</u> Court explained, civil actions by their very nature involve a multi-dimensional decision-making process, as opposed to a one-dimensional inquiry. Thus, proving that a comparator is prima facie identical in all relevant respects is a difficult standard to meet. As explained in Section I of the Alabama Standards for Imposing Lawyer Discipline:

> "While there may be particular cases of lawyer misconduct that are not easily categorized, the standards are not designed to propose specific discipline for each of the myriad of fact patterns in cases of lawyer misconduct. Rather, the standards are guidelines that provide a theoretical framework to guide the Disciplinary Board in imposing discipline. The ultimate discipline imposed will depend on the presence of any aggravating or mitigating factors in that particular situation. The standards thus are not analogous to criminal determinate sentences, but are guidelines that give Disciplinary Boards the flexibility to select the appropriate discipline in each particular case of lawyer misconduct."

See <u>Goldfarb v. Virginia State Bar</u>, 421 U.S. 773, 792 (1975) (recognizing that states have a "compelling interest in the practice of professions

31

within their boundaries" and that states therefore have "broad power to establish standards for licensing practitioners and regulating the practice of professions"). Finally, Alabama has an indisputable interest in regulating attorneys in order to protect the public, the legal system, and the legal profession. <u>See</u> Standard 1.1, Alabama Standards for Imposing Lawyer Discipline ("The purpose of lawyer discipline proceedings is to protect the public and the administration of justice from lawyers who have not discharged, will not discharge, or are unlikely properly to discharge their professional duties to clients, the public, the legal system, and the legal profession."). Thus, enforcing the application of the Rules of Professional Conduct is, on its face, rationally related to achieving this legitimate state interest. Accordingly, the Board did not err in denying Blevins's motion for a postjudgment motion to alter, amend, or vacate based on Blevins's equal-protection claim or in denying his request for an evidentiary hearing based on that claim.

## IV. Conclusion

Based on the foregoing, we conclude that the order of the Board was supported by clear and convincing evidence and that the Board

appropriately applied the law to the facts. The order of the Board is, therefore, affirmed.

AFFIRMED.

Sellers and Parker, JJ., concur

Stewart, C.J., and Shaw, Bryan, Mendheim, and McCool, JJ., concur in the result.

Wise and Cook, JJ., recuse themselves.